## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| S.S., INDIVIDUALLY | ) |
| AND ON BEHALF OF MINORS A.B. and N.B. | ) |
| | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) |
| | ) |
| THE DISTRICT OF COLUMBIA | ) |
| One Judiciary Square | ) |
| 441 Fourth Street, NW | ) |
| Washington, D.C. 20001 | ) |
| | ) |
| SERVE: | ) |
| | ) |
| MURIEL BOWSER | )   Civil Action No. |
| Mayor of the District of Columbia | ) |
| 1350 Pennsylvania Avenue, NW, 4th Fl. | )   JURY TRIAL DEMANDED |
| Washington, D.C. 20004 | ) |
| | ) |
| KARL RACINE | ) |
| Attorney General for DC | ) |
| 441 4th Street NW, Suite 630 South | ) |
| Washington, DC. 20001 | ) |
| | ) |
| and | ) |
| | ) |
| DC CHILD AND FAMILY SERVICES AGENCY | ) |
| BRENDA DONALD, Director | ) |
| 200 I Street, SE | ) |
| Washington, DC 20003 | ) |
| | ) |
| Defendants | ) |
| _____ | ) |

## **COMPLAINT**

## I. PRELIMINARY STATEMENT

1.      The District of Columbia is obligated under federal and D.C. law to safeguard children's

health and well-being, and to take necessary and appropriate steps to ensure that abused or

neglected children who cannot be protected from harm in their home are placed in a safe environment and provided assistance, including financial support. Specifically, if the District of Columbia, through its agency, the Child and Family Services Agency ("CFSA") (collectively, the "Defendants"), determines that a child has been neglected or abused and cannot be protected in the home by the provision of services, CFSA must remove the child from the unsafe home.  Unless a parent consents to removal, CFSA must petition the Family Division of the D.C. Superior Court ("D.C. Family Court") to initiate a neglect case and seek custody of the child so that the child can be placed in foster care.

2.      CFSA must consider giving preference to an adult relative over a non-related caregiver when placing a child in foster care. When CFSA places a child with a relative, which is known as kinship placement or kinship foster care, CFSA is required to license the relative as a foster parent. Once the child has been placed with a licensed foster parent (related or nonrelated), the child is entitled to a number of services that help to ensure their continued health and safety, including continued court and CFSA supervision. Additionally, the foster parent is entitled to foster care maintenance payments to help alleviate the financial burden of caring for the child.

3.      Despite these requirements, Defendants, for at least the last 10 years, have consistently and repeatedly engaged in the custom and practice of kinship diversion[1], whereby Defendants remove children from the custody of their parents and informally place them in the care of a relative caregiver, rather than placing the child in foster care with that same relative.  Unlike foster children and foster parents, Defendants do not provide diverted children and their relative caregivers with any services or foster care maintenance payments. By ignoring the legally-required removal and

---

[1] Kinship diversion is also referred to as "hidden foster care."  *See* Josh Gupta-Kagan, *America's Hidden Foster Care System*, 72 Stan. L. Rev. (2020).

placement procedures, Defendants avoid the legal and financial responsibilities to support these children and their relative caregivers.  Indeed, on information and belief, Defendants have adopted this custom and practice of kinship diversion to relative caregivers, and now use it routinely, *precisely to avoid those responsibilities*. The use of kinship diversion rather than kinship foster care placement deprives both child and caregiver of their rights to assistance, in violation of the United States Constitution, and federal and D.C. law.

4.      Plaintiff A.B., a 10-year-old girl, and Plaintiff N.B., an 11-year-old boy, are the biological children of their mother S.B.[2]  There is no father listed on either A.B.'s or N.B.'s birth certificate, and there has been no legal determination of paternity. A.B. and N.B.'s mother has long-standing mental health issues and a history of abusing and neglecting A.B. and N.B.  As a result, Defendants removed A.B. and N.B. from S.B.'s care and informally and illegally placed A.B. and N.B. through kinship diversion in the care of their maternal grandmother, Plaintiff S.S.  Defendants did not inform S.S. of her option to become a licensed foster parent for A.B. and N.B.

5.      S.S. has continued to care for A.B. and N.B. on a daily basis since Defendants effected the kinship diversion on May 27, 2020, about two months into the COVID-19 public health emergency. During this time, Defendants have failed to provide any support or services to S.S., A.B., or N.B., including development of a case plan to reunify A.B. and N.B. with their mother and services to protect the health and safety of A.B. and N.B. Further, Defendants failed to make foster care maintenance payments to S.S. on behalf of A.B. and N.B.

---

[2] Pursuant to Rule 5.2(a) of the Federal Rules of Civil Procedure and Rule 5.4(f) of the Local Rules of the U.S. District Court for the District of Columbia, the minor plaintiffs are identified by their initials. Plaintiffs have filed a motion and accompanying memorandum requesting leave of the Court for S.S. and the minor children's biological mother to be identified anonymously and for all Plaintiffs' residential addresses to be substituted with the address of their counsel, DC KinCare Alliance.

6.      Defendants' failures have resulted in withheld foster care support services and financial losses from foster care maintenance payments that otherwise would have been paid in the amount of approximately $20,520 for A.B. and N.B. to date, as well as other amounts to be determined at trial.

7.      As a direct consequence of Defendants' conduct, S.S., A.B., and N.B. (collectively, the "Plaintiffs") have been and continue to be denied the full services, economic benefits and other rights to which they are entitled under federal and D.C. law.

8.      Moreover, Defendants have violated federal and D.C. law by discriminating against Plaintiffs by treating the caregiver and children under her care differently and less supportively than Defendants treat children in licensed foster care and their foster parents.

9.      This action seeks declaratory and injunctive relief, as well as damages, to redress the violations of federal and D.C. law.

## II.  JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and 42 U.S.C. § 1983 because this action arises under the Constitution and the laws of the United States. Specifically, this action arises under Title IV-E of the Social Security Act, 42 U.S.C. §§ 670-679c ("Social Security Act"), and the Fifth and Fourteenth Amendments to the United States Constitution.

11.     Plaintiffs' claims for declaratory relief and damages are authorized by 28 U.S.C. §§ 2201-2202 and 42 U.S.C. § 1983, and by the inherent powers of this court in law and in equity.

12.     This Court also has supplemental jurisdiction over Plaintiffs' pendent state law claims under 28 U.S.C. § 1367.

13.     Venue is proper under 28 U.S.C. §1391(b)(2) because all of the events and omissions giving rise to Plaintiffs' claims occurred in D.C.

4

### III.  PARTIES

14.     Plaintiffs A.B. and N.B. are minor children who were removed from the custody of their biological mother and placed via kinship diversion in the care of their maternal grandmother, S.S. Plaintiff S.S. brings this action on her own behalf and on behalf of A.B. and N.B.

15.     Plaintiffs are citizens of the United States and have been D.C. residents at all relevant times.

16.     Defendant District of Columbia is the government of D.C. Defendant District of Columbia operates and has oversight over Defendant CFSA.

17.     Defendant CFSA is a cabinet-level agency of the District of Columbia charged with administering the foster care system and ensuring the safety and well-being of children residing within D.C. CFSA is responsible both for responding to and investigating reports of child abuse and neglect and for removing and placing neglected or abused children who cannot be protected in their own home.

### IV.  FEDERAL AND D.C. LAW GOVERNING DISTRICT OF COLUMBIA'S OBLIGATIONS TO ABUSED AND NEGLECTED CHILDREN AND THEIR CAREGIVERS

18.     By acting through CFSA to effect kinship diversions without following the legally required procedures for removal and foster care placement, Defendant District of Columbia has violated and continues to violate the Social Security Act, the D.C. Prevention of Child Abuse and Neglect Act of 1977 ("D.C. Child Abuse and Neglect Act"), the D.C. Human Rights Act of 1977 ("D.C. Human Rights Act"), and the Fifth and Fourteenth Amendment rights of the Plaintiffs.

19.     By effecting kinship diversions without following the legally required procedures for removal and foster care placement, Defendant CFSA has violated and continues to violate the Social Security Act, the D.C. Child Abuse and Neglect Act, the D.C. Human Rights Act, and the Fifth and Fourteenth Amendments of the United States Constitution.

A.    __Obligations Under The Federal Social Security Act__

20.    The Social Security Act establishes a federal-state grant program that is designed to ensure that abused and neglected children who cannot be protected from harm in their homes are placed in a safe and stable environment until those children are able to return home safely or are placed in another permanent living arrangement.

21.    The Social Security Act requires any "State" [3] that opts to receive Title IV funds to have a plan approved by the Secretary of the U.S. Department of Health and Human Services, and to agree to administer its foster care program in accordance with the statutory requirements and implementing regulation, which, in pertinent part –

   (a)    require that reasonable efforts be made to preserve and reunify families by seeking to prevent or eliminate the need for removing the child from their home prior to placement in foster care and to make it possible for the child to safely return to their home, and, if the family cannot safely be reunified, require that steps be taken to finalize a permanent placement for the child, 42 U.S.C. § 671(a)(15)(B)-(C);

   (b)    require that the removal of a child from their home is in accordance with a judicial determination that continuation in the home would be contrary to the welfare of the child or with a voluntary placement agreement, and require that the child is placed in a foster family home or child care institution that meets the standards for foster family homes or child care institutions and has been licensed or approved by the State, 42 U.S.C. §§ 671(a)(10), 672(a)(2), 672(c);

   (c)    require that due diligence be exercised to provide notice to adult relatives within 30 days of effecting a removal, which, *inter alia*, must "explain[] the options the

---

[3] Under the Act, the term "State" includes the District of Columbia. 42 U.S.C. § 603(b)(7).

relative has under Federal, State, and local law to participate in the care and placement of the child, including any options that may be lost by failing to respond to the notice" and "describe[] the requirements…to become a foster family home and the additional services and supports that are available for children placed in such a home," 42 U.S.C. § 671(a)(29);

(d)    require that children in foster care receive quality services to protect their health and safety, 42 U.S.C. § 671(a)(22);

(e)    require that foster care maintenance payments[4] be made on behalf of each child who has been removed from their home, if the child "would have met the [TANF][5] eligibility requirements" prior to being removed, 42 U.S.C. § 672(a)(1);

(f)    provide for the development of a "case plan" for each child in foster care that, *inter alia*, ensures that services are provided to the child, parents and caregivers in order to "facilitate return of the child to his own safe home or the permanent placement of the child, and address the needs of the child while in foster care" and includes the child's health and education records, 42 U.S.C. §§ 671(a)(16), 675(1); and

(g)    require that each case plan be reviewed at least every six months by a court or administrative body under the State's "case review system" to assess, *inter alia*, the child's safety, the continuing need for and appropriateness of the placement, and the

---

[4] Foster care maintenance payments are defined as payments which "cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, reasonable travel to the child's home for visitation, and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement." 42 U.S.C. § 675(4)(A).

[5] TANF, which stands for Temporary Assistance for Needy Families, is a federal program that provides assistance to families with children when the parents or other responsible relatives cannot provide for the family's basic needs.

likely date by which the child may be safely returned to their home or be placed for

adoption or legal guardianship, 42 U.S.C. §§ 671(a)(16), 675(5).

22.     District of Columbia has opted to receive Title IV-E funds and, accordingly, is bound by

each of the foregoing requirements with respect to the provision of benefits and services to each

abused and neglected child.

**B.      Obligations Under D.C. Child Abuse and Neglect Act**

23.     The D.C. Child Abuse and Neglect Act provides that CFSA shall, *inter alia*: (i) receive and

respond to reports of child abuse and neglect[6]; (ii) when necessary, remove children from their

homes; (iii) ensure that children who have been abused or neglected are protected from further

experiences and conditions detrimental to their healthy growth and development; (iv) obtain

substitute care for a child whose parents are unable to meet the child's minimum needs; (v) provide

services and resources to abused and neglected children and their families, including services

aimed at safely reuniting the family as quickly as possible; and (vi) ensure timely permanent

placement of the child where reunification is not possible. D.C. Code § 4-1303.01a. *See also* § 4-

1303.03 *et seq*.

24.     Pursuant to its responsibility to receive and respond to reports of child abuse and neglect,

CFSA is required to "conduct a thorough investigation of a report of suspected child abuse or

neglect to protect the health and safety of the child or children when . . . [CFSA] suspects a child

---

[6] Under the D.C. Child Abuse and Neglect Act, child abuse includes the infliction of physical or mental injury upon a child, sexual abuse or exploitation of a child, and the negligent treatment or maltreatment of a child. D.C. Code § 16-2301(23)(A). A neglected child is, *inter alia*, a child who is without proper parental care or control, subsistence, education or other care necessary for his or her physical, mental, or emotional health, and a child whose parent, guardian, or custodian is unable to discharge his or her responsibilities to and for the child because of incarceration, hospitalization, or other physical or mental incapacity. § 16-2301 (9)(A)(ii) and (iii).

is at imminent risk of or has experienced abuse or neglect that [CFSA] determines to be severe." § 4-1301.04(a)(1). The investigation must determine "the nature, extent, and cause of the abuse or neglect, if any." § 4-1301.06(a)-(b)(1).[7] If the suspected abuse or neglect is substantiated, CFSA shall determine whether there is any child in the home whose health, safety, or welfare is at risk and whether any child who is at risk should be removed from the home or can be protected by the provision of resources. § 4-1301.06(b)(3).

25.     When a report of child abuse or neglect is substantiated and CFSA determines the child cannot be "adequately protected" while living in the parental home through the provision of services, CFSA is only authorized to: "(1) Remove the child with the consent of the parent, guardian, or person acting in loco parentis; (2) Request the Corporation Counsel of the District of Columbia to petition the [D.C. Family Court] for a finding of abuse or neglect and, where appropriate, the removal of the child; and (3) Request the police to remove the child when the consent of a parent, guardian or other custodian cannot be obtained and the need to protect the child does not allow sufficient time to obtain a court order." § 4-1303.04(c).

26.     Once CFSA has removed a child from their home, CFSA is required to place the child with a licensed foster parent.[8] §§ 4-1303.04(a-1)(1), 4–217.02.  For each child who is removed to foster care, CFSA must provide monetary benefits to the foster parent on behalf of the child if the child is eligible for TANF and certain other criteria are satisfied. § 4-217.01.  Although the statute prescribes certain eligibility requirements, CFSA's policy is to make "resource payments" on

---

[7] While CFSA is permitted 30 days to complete a full investigation, oftentimes the abuse or neglect is readily apparent and is effectively substantiated when the social worker arrives at the scene.

[8] CFSA also may place the child in a child care institution if that "best meets" the child's needs. § 4–217.02.

behalf of all children in the foster care system. *See, e.g.*, CFSA, *Resource Parent Handbook* 93–95 (2018).

27.     In addition, CFSA must prepare a case plan for the child and family and must take such steps (including, but not limited to, providing or arranging for appropriate services to the child and family) as are needed for the protection of the child and the preservation, rehabilitation and, when safe and appropriate, reunification of the family. D.C. Code § 4-1301.09(b). *See also* § 4-1301.02(3) (defining "case plan").  The case plan must include the child's health and education records, and CFSA is required to assist foster parents in obtaining personal records for foster children, including immunization records, birth certificate, social security card, or health insurance card. § 4–1301.02(3)(C); D.C. Mun. Reg. § 29-6003; CFSA, *Relationship with Resource Parents Policy*, (effective Aug. 7, 2004).

28.     CFSA must ensure that the status of each child in foster care is reviewed periodically. D.C. Code § 4-1301.09(d). This review shall determine the safety of the child, the continuing necessity for and appropriateness of the placement, the extent of compliance with the case plan, the extent of progress towards alleviating or mitigating the causes necessitating foster care, and a projected date for returning the child safely to the home or placing the child for adoption or other permanent placement. § 4-1301.09(e)(1).

29.     CFSA is required to make reasonable efforts to make it possible for a child in foster care to return safely to their home. § 4-1301.09a(b). In making such reasonable efforts, "the child's safety and health shall be the paramount concern." § 4-1301.09a(a). If such reasonable efforts "are determined to be inconsistent with the child's permanency plan, [CFSA] shall make reasonable efforts to place the child in accordance with the child's permanency plan and to complete whatever steps are necessary to finalize the child's permanent placement." § 4-1301.09a(c).

C.    **Obligations Under D.C. Human Rights Act**

30.    The D.C. Human Rights Act states that it is "an unlawful discriminatory practice for a District government agency or office to limit or refuse to provide any facility, service, program, or benefit to any individual on the basis of an individual's actual or perceived: . . . familial status."[9] § 2-1402.73.

31.    Pursuant to the D.C. Human Rights Act, CFSA may not unlawfully discriminate against diverted children and their relative caregivers by refusing to provide them with foster care benefits and services on the basis of familial status. Instead, CFSA must provide diverted children placed with relative caregivers who are seeking, or who already have, legal custody of those children the same services and support as it provides to foster families.

## V.  CUSTOM AND PRACTICE OF REMOVAL AND INFORMAL PLACEMENT THROUGH KINSHIP DIVERSION

32.    Because Defendants receive money under Title IV-E of the Social Security Act, Defendants must operate the D.C. foster care program in accordance with the requirements under the Act, as well as the requirements under the D.C. Child Abuse and Neglect Act. Although receipt of these funds requires such compliance, Defendants' custom and practice of kinship diversions is in blatant violation of those statutes.

33.    As discussed above, when CFSA determines a neglected or abused child must be removed from their home, CFSA is only authorized to do so if CFSA obtains a judicial determination or parental consent to effect the removal, or requests the police to remove the child because there is

---

[9] The term 'familial status' is defined as "one or more individuals under 18 years of age being domiciled with: (1) a parent or other person having legal custody of the individual; or (2) the designee, with written authorization of the parent, or other persons having legal custody of individuals under 18 years of age. The protection afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or in the process of securing legal custody of any individual under 18 years of age." § 2-1401.02(11A).

insufficient time for CFSA to petition for removal. § 4-1303.04(c). These removal requirements "protect[] the integrity of established family units" and apply regardless of whether the child is placed with a relative or non-relative foster parent. *Miller v. Youakim*, 440 U.S. 125, 139 (1979).

34. Once the child has been removed from their home, the child must be placed in a licensed foster family home or licensed child care institution. CFSA has a formal procedure for placing the child with a relative foster parent, which CFSA refers to as a ***kinship placement***. Prior to effecting a kinship placement, CFSA is required to issue the relative with whom the child is being placed a license (or a temporary license) to operate a foster home. D.C. Mun. Reg. § 6027.1. Even though the foster parent is a relative of the child, such licensure is necessary "to assure that each child in [CFSA's] care and custody has a placement that meets their needs for safety, permanence, and well-being." CFSA, *Temporary Licensing of Foster Homes for Kin Policy*, (effective Sept. 20, 2011). This also ensures "the same level of protection for all children who are placed in out-of-home care" and entitles both the foster parent and foster child to the same services and benefits afforded to other foster parents and children who are not related. *Id.*

35. Despite the fact that there are legally established procedures and requirements for effecting a kinship placement, CFSA has instead adopted the custom and practice of informally and illegally placing abused and neglected children with relatives through ***kinship diversion***, without issuing licenses to the caretaker relatives. Specifically, after CFSA has substantiated[10] a report of child abuse or neglect and determined the child cannot be protected in their home through the provision of services, CFSA will contact a relative to see if they are willing to care for the child. If CFSA

---

[10] When CFSA engages in kinship diversion, the agency does not always accurately record that an allegation against a parent was substantiated, presumably because that would trigger legal requirements under federal and/or D.C. law for removal and placement of a child in licensed foster care if the child cannot remain safely at home. In this case, however, CFSA did substantiate a finding of neglect.

identifies a willing relative that is available to care for the child, CFSA deliberately ignores its responsibility to inform the relative of their option to become licensed as a foster parent, and threatens that if there is not agreement for the child to live informally with the relative, the child will go into foster care with a stranger.  Through such actions, CFSA informally and illegally places the child with the relative through kinship diversion, rather than removing the child in accordance with applicable law and formally placing the child with a relative who has been licensed as a foster parent.

36.     CFSA's use of kinship diversion constitutes a ***flouting*** of D.C. law, because it subverts the formally established procedures for removal and kinship placements and thereby denies diverted children and their relative caregivers the same benefits, services, and protections that foster children and foster parents receive. For example, prior to placing a child in foster care, CFSA is required to, *inter alia*, perform a health and safety assessment of the foster parent's home and require the foster parent to meet conditions related to the child's sleeping arrangement, health care, and education. However, when CFSA effects a kinship diversion, CFSA does not routinely conduct a home study to ensure that the relative caregiver's residence is safe, collect basic information about the relative caregiver and others living in the home, or ensure the relative caregiver has the means to care for the child.

37.     Furthermore, once the child has been informally placed in a kinship diversion arrangement, CFSA does not monitor the child or provide even minimal post-diversion services or support to the child, birth parent, or relative caregiver. Without CFSA oversight and accountability, the urgent needs of the child (*e.g.,* mental health, medical, and educational services), the birth parent (*e.g.,* mental health or substance abuse treatment, parent education classes), and the relative caregiver (*e.g.,* child care, peer support groups, respite) can go unmet, and there is no process for safely

reunifying the child with their parents.[11] Moreover, neither the diverted children nor the relatives responsible for their care receive financial support, such as foster care maintenance payments and vouchers for camps, enrichment programs, or other programs available to foster children. When relative caregivers seek such services or support by requesting to be licensed as a foster parent, CFSA also routinely denies their requests, even though the relative caregivers meet the requirements for licensure.

38.     Upon information and belief, senior management of CFSA has long directed, knowingly acquiesced to and/or expressly endorsed this custom and practice, which allows CFSA to appear to meet certain statistical targets for reducing the number of children in foster care. These targets are not only arbitrary but provide CFSA with a perverse incentive to use kinship diversion, rather than attempt to license relative caregivers as foster parents. The custom and practice of kinship diversion has saved District of Columbia millions of dollars over at least the past 10 years by depriving its most vulnerable residents of resources to which they are legally entitled.

## VI.  DEFENDANTS' KINSHIP DIVERSION OF CHILDREN VIOLATES FEDERAL AND D.C. LAW

39.     CFSA engaged in kinship diversion when it failed to notify S.S. of her option to be licensed as a foster parent, allowed A.B. and N.B. to be removed from their mother's care, and informally and illegally placed them in the care of S.S.

40.     Plaintiffs A.B. and N.B. are the biological children of their mother, S.B. Upon information and belief, there is no father listed on either A.B. or N.B.'s birth certificate and there has been no

---

[11] The Supreme Court has recognized that parents have a fundamental Constitutional liberty interests in "the care, custody, and control of their children." *Troxell v Granville*, 530 U.S. 57 (2000).  Accordingly, when CFSA decides that a child should be removed from the parental home and cared for by a relative without parental consent or a court order, it also violates the parents' constitutional rights.

legal determination of paternity.  S.B. has long-standing mental health issues and a history of abusing and neglecting A.B. and N.B.  S.B. has struggled with bipolar disorder and has previously been hospitalized on multiple occasions due to her illness.[12] S.B. does not take the medications that have been prescribed to her to treat her condition.

41.     On May 20, 2020, CFSA initiated an investigation of child abuse or neglect of A.B. and N.B.  As part of the investigation, CFSA social worker Maria Copeland spoke with S.S. about being a resource for A.B. and N.B. if their mother, S.B., was no longer able to care for them. At the time, S.B., A.B., and N.B. were living in a homeless shelter.

42.     As a result of the investigation, CFSA determined that A.B. and N.B. needed to be removed from S.B.'s care due to inadequate supervision and physical abuse of A.B. who S.B. had punched in the face. On or about May 22, 2020, CFSA filed petitions in the DC Superior Court for the removal of A.B. and N.B.

43.     On May 22, 2020, S.S. was contacted by a CFSA social worker who informed her that if she did not want the children to enter foster care, she needed to file for custody of A.B. and N.B.

44.     At the direction of CFSA, S.S. filed a motion for emergency custody of A.B. and N.B. on May 26, 2020.  A custody hearing was held the following day, during which CFSA represented that it had dismissed the petitions for removal of the minor children from their mother's care as a result of S.S.'s emergency motion for custody.  During the hearing, the court granted S.S. sole legal and physical custody of A.B. and N.B.

45.     Despite the fact that Defendants determined that A.B. and N.B. needed to be removed from their mother's care and placed with S.S., Defendants failed to follow the legally required removal

---

[12] Upon information and belief, S.B. was most recently hospitalized at Howard University Hospital psychiatric inpatient unit on or about November 19, 2020, where she stayed for approximately one week, after which time she left against medical advice.

and placement procedures.  Further, Defendants failed to notify S.S. of her option to participate in A.B. and N.B.'s care, including that S.S. could become a licensed foster parent for A.B. and N.B.

46.     In November 2020, CFSA removed S.B.'s two-month-old baby, the younger sibling of A.B. and N.B., from S.B.'s care, placed the baby with S.S., and filed a neglect petition in D.C. Superior Court for the removal of the baby.  S.S. became licensed as the baby's foster parent.  At the time of removal and placement of S.B.'s baby, S.S. asked the assigned CFSA social worker, Denise Jackson, if S.S. could also be a foster parent to A.B. and N.B.  Jackson informed S.S. she could not be a foster parent to A.B. and N.B.

47.     Following the placement of A.B. and N.B. in S.S.'s care, S.B. has stalked and harassed S.S. On January 15, 2021, S.B. vandalized S.S. and her neighbors' cars, including smashing in a windshield with a brick.  As a result of these incidents, S.S. filed for and was granted a Temporary Protection Order ("TPO") against S.B.  The TPO prohibits S.B. from assaulting, threatening, stalking, harassing, or contacting S.S. and requires S.B. to stay 100 feet away from S.S.'s home, person, work, and vehicle.

48.     On January 19, 2021, the TPO was modified to prohibit S.B. from assaulting, threatening, stalking, or physically abusing her minor children.  The TPO permits S.B. to maintain her supervised visitation schedule with A.B. and N.B. as ordered by the judge in their custody case.

49.     Since May 27, 2020, S.S. has cared for A.B. and N.B.   During this time, Defendants have failed to provide any support or services to S.S., A.B. or N.B., including development of a case plan to reunify A.B. and N.B. with their mother and provide services to protect the health and safety of A.B. and N.B.   In particular, both A.B. and N.B. have been diagnosed with mental health disorders.  N.B. has been diagnosed with ADHD (combined type) and Dysthymic disorder and A.B. has been diagnosed with Major Depressive Disorder (recurrent, unspecified) and has had

previous suicidal ideations. A.B also has trouble sleeping and with bedwetting. Both children require weekly individual and family therapy as well as prescribed psychotropic medication. CFSA has failed to provide any support services to A.B. or N.B. related to these conditions.

50.     Further, Defendants failed to make foster care maintenance payments to S.S. on behalf of A.B. and N.B.  At all relevant times, A.B. and N.B. were eligible to receive benefits under the TANF program and, accordingly, S.S. was entitled to receive foster care maintenance payments on behalf of A.B. and N.B., which amounts to $1,140 per 30-day period.  S.S. did not receive any foster care payments on behalf of A.B. and N.B. and was forced to shoulder all of the costs of caring for A.B. and N.B., a substantial financial and emotional burden for her, especially during the COVID-19 public health emergency.

51.     As described above, CFSA's failure to remove A.B. and N.B. to foster care and license S.S. as a foster parent has resulted in injury to Plaintiffs including, but not limited to, housing and food instability, emotional distress, and a lack of permanency for A.B. and N.B. CFSA's affirmative misconduct has resulted in an egregiously unfair and harmful injury to S.S., A.B., and N.B.

52.     On February 4, 2021, S.S, for herself and on behalf of A.B. and N.B., submitted a Notice of Claim against District of Columbia to the D.C. Office of Risk Management.    By letters dated February 10, 2021, the D.C. Office of Risk Management acknowledged receipt of the Notice of Claim.

## VII.  CLAIMS

### COUNT I:  VIOLATION OF TITLE IV-E OF THE
### SOCIAL SECURITY ACT, 42 U.S.C. §§ 670-679c

53.     Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs of this complaint.

54.     The foregoing actions and inactions of Defendants District of Columbia and CFSA, constitute a deprivation of rights conferred on Plaintiffs A.B. and N.B. by Title IV-E of the Social Security Act, to**:**

(a)     removal from their mother's care pursuant to a voluntary placement agreement or judicial determination that continuation in the home would be contrary to the welfare of the children, 42 U.S.C. § 672(a)(2);

(b)     placement in a home that meets the standards for foster family homes, and has been licensed or approved by the State, 42 U.S.C. §§ 671(a)(10), 672(c);

(c)     the provision of quality services to protect the children's safety and health, 42 U.S.C. § 671(a)(22);

(d)     a written case plan that describes the type of home in which the children are to be placed, including the safety and appropriateness of the placement, 42 U.S.C. §§ 671(a)(16), 675(1)(A);

(e)     a written case plan that ensures that the children receive safe and proper care while in foster care and implementation of that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

(f)     a written case plan that ensures provision of services to the children, parent and foster parents in order to facilitate reunification or where that is not possible, the permanent placement of the children, and to address the needs of the children while in foster care and implementation of that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

(g)     a written case plan that ensures the educational stability of the children while in foster care and implementation of that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(G);

(h)     a case review system that ensures the children have a case plan designed to achieve placement in a safe and appropriate setting, 42 U.S.C. §§ 671(a)(16), 675(5)(A);

(a)     a case review system in which the status of the children are reviewed no less frequently than every six months by a court, or person responsible for case management, for purposes of determining the safety of the children, the continuing necessity for and appropriateness of the placement, extent of compliance with the case plan and projected date of permanency, 42 U.S.C. §§ 671(a)(16), 675(5)(B), 675(5)(C); and

(b)     foster care maintenance payments to cover the cost of food, clothing, shelter, daily supervision, school supplies, the children's personal incidentals, liability insurance with respect to the children, reasonable travel to the children's home for visitation, and reasonable travel for the children to remain in the school in which the children are enrolled at the time of placement, 42 U.S.C. §§ 671(a)(1), 672(a)(1), 675(4)(A).

55.  Further, the foregoing actions and inactions of Defendants District of Columbia and CFSA, constitute a deprivation of rights conferred on Plaintiff S.S. by Title IV-E of the Social Security Act, to:

(a)     receive formal notice that explains the options the relative has under Federal and D.C. law to participate in the care and placement of the child, including any options that may be lost by failing to respond to the notice, 42 U.S.C. § 671(a)(29);

(b)     receive formal notice that describes the requirements to become a foster family home and the additional services and support that are available for children placed in such a home, 42 U.S.C. § 671(a)(29); and

(c)     receive foster care maintenance payments on behalf of each child who has been removed from their home and placed in the relative's care to cover the cost of providing food, clothing, shelter, daily supervision, school supplies, the children's

personal incidentals, liability insurance with respect to the children, reasonable

travel to the children's home for visitation, and reasonable travel for the children to

remain in the school in which the children are enrolled at the time of placement, 42

U.S.C. §§ 671(a)(1), 672(a)(1), 675(4)(A).

56.     By its acts and omissions, in particular its custom and practice of kinship diversion,

Defendants have deprived Plaintiffs of their rights under Title IV-E of the Social Security Act, and

thereby caused injury to Plaintiffs, including financial and emotional harm.

57.     Plaintiffs' claim for violation of Title IV-E of the Social Security Act is brought pursuant

to 42 U.S.C. § 1983, which affords Plaintiffs a private right of action. Pursuant to 42 U.S.C. § 1983,

Plaintiffs are entitled to compensation for such injuries and for the payment of reasonable attorneys'

fees, costs, and interest in an amount to be proven at trial.

**COUNT II:  VIOLATION OF THE EQUAL PROTECTION CLAUSE
OF THE FOURTEENTH AMENDMENT AS APPLIED TO D.C. THROUGH THE DUE
PROCESS CLAUSE OF THE FIFTH AMENDMENT**

58.     Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs of this

complaint.

59.     As averred in Par. 54-55, Defendants, through their custom and practice of kinship

diversion, have intentionally deprived Plaintiffs of their rights under the Social Security Act.

60.     Further, through the custom and practice of kinship diversion, Defendants have deprived

and continue to deprive A.B. and N.B. of certain entitlements conferred by the D.C. Child Abuse

and Neglect Act to which A.B. and N.B. have a constitutionally protected interest. These

entitlements include the right to:

(a)     be removed from their home once CFSA had determined that they could not be

adequately protected in their home through the provision of services, and to have

such removal be made pursuant to a D.C. Family Court finding of abuse or neglect

and removal or the consent of their parent, or by requesting the police to remove if there was insufficient time for CFSA to file a petition, § 4-1303.04(c);

(b)      be placed in a licensed foster care home or facility, § 4–217.02;

(c)      receive appropriate services, §§ 4-1301.09(b), 4-1301.02(3);

(d)      receive a case plan and have their status reviewed periodically, §§ 4-1301.09(b), 4-1301.09(d), 4-1301.02(3); and

(e)      have monetary support provided by CFSA on their behalf, § 4-217.01, CFSA, *Resource Parent Handbook* 93–95 (2018).

61.      In depriving A.B. and N.B. of their rights under the Social Security Act and the D.C. Child Abuse and Neglect Act, Defendants have failed to provide the same procedures, services, and support as Defendants provide to other children who have experienced a similar type and severity of mistreatment. Defendants' discriminatory treatment is not rationally related to advancing any legitimate governmental interest and therefore violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution as applied to D.C. through the Due Process Clause of the Fifth Amendment.

62.      In depriving S.S. of her rights under the Social Security Act, Defendants have failed to provide the same procedures, services, and support as Defendants provide to foster parents caring for children who experienced a similar type and severity of mistreatment. Defendants' discriminatory treatment is not rationally related to advancing any legitimate governmental interest and therefore violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution as applied to D.C. through the Due Process Clause of the Fifth Amendment.

63.     Defendants' acts and omissions complained of herein have caused the violation of Plaintiffs' constitutional rights and caused injury to Plaintiffs, including financial and emotional harm.

64.     Plaintiffs' claim for violation of the Equal Protection Clause of the Fourteenth Amendment is brought pursuant to 42 U.S.C. § 1983, which affords Plaintiffs a private right of action.  Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to compensation for such injuries and for the payment of reasonable attorneys' fees, costs, and interest in an amount to be proven at trial.

## COUNT III:  VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT

65.     Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs of this complaint.

66.     As averred in Par. 54 and Par. 60, Defendants, through their custom and practice of kinship diversion, have intentionally deprived A.B. and N.B. of their rights under the Social Security Act and the D.C. Child Abuse and Neglect Act to which A.B. and N.B. have a constitutionally protected interest, without providing an adequate or meaningful opportunity to be heard.

67.     Moreover, through its custom and practice of kinship diversion, Defendants have deprived A.B. and N.B. of their constitutional right to familial integrity and have done so without respecting the required procedural safeguards.  In particular, to protect the integrity of established family units, District of Columbia has implemented procedural safeguards which require that CFSA either obtain parental consent or obtain a court finding of abuse or neglect and removal, prior to removing a child from their home, or request the police remove the child if there is insufficient time to petition for removal.  By circumventing the mandated removal procedures, Defendants have deprived A.B. and N.B. of their constitutionally protected right to familial integrity without providing an adequate or meaningful opportunity to be heard.

22

68.     As averred in Par. 55, Defendants, through their custom and practice of kinship diversion, have intentionally deprived S.S. of her rights under the Social Security Act, including the right to receive foster care maintenance payments, without providing an adequate or meaningful opportunity to be heard.

69.     In each instance, Defendants deprived Plaintiffs of the rights and entitlements afforded to them under the Social Security Act and D.C. Child Abuse and Neglect Act, without providing an opportunity for a fair hearing, thereby denying Plaintiffs of their right to due process of law.

70.     Defendants' acts and omissions complained of herein have violated the Plaintiffs' rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution and caused injury to Plaintiffs, including financial and emotional harm.

71.     Plaintiffs' claim for violation of the Due Process Clause of the Fifth Amendment is brought pursuant to 42 U.S.C. § 1983, which affords Plaintiffs a private right of action.  Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to compensation for such injuries and for the payment of reasonable attorneys' fees, costs, and interest in an amount to be proven at trial.

## COUNT IV:  VIOLATION OF D.C. HUMAN RIGHTS ACT

72.     Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs of this complaint.

73.     Under the D.C. Human Rights Act, it is "an unlawful discriminatory practice for a District government agency or office to limit or refuse to provide any facility, service, program, or benefit to any individual on the basis of an individual's actual or perceived . . . familial status…." D.C. Code § 2-1402.73.

74.     CFSA's practice of kinship diversion intentionally discriminates on the basis of familial status.  As averred in Par. 33-35, if following a determination that a child has been abused or neglected and should be removed from their home, CFSA identifies a relative willing to care for

the child, CFSA has a custom of placing the child with the relative informally, rather than following the legally-required removal and placement procedures. CFSA routinely directs or pressures the relative to file an emergency motion for legal and physical custody of the child (which creates "familial status" under D.C. Code § 2-1401.02(11A)), including by threatening to place the child in foster care with a stranger if the relative does not agree to do so. Thereafter, CFSA refuses to provide the relative caregiver and the diverted child the benefits and services that CFSA provides to other foster families.

75.     CFSA removed A.B. and N.B. and informally placed them in the care of S.S. through kinship diversion.  In the course of effecting the kinship diversion, CFSA caused S.S. to file an emergency motion for legal custody of A.B. and N.B. S.S. subsequently requested that CFSA allow her to apply to be a foster parent and thereby receive foster care maintenance payments and other benefits on behalf of A.B. and N.B.  CFSA denied this request.  CFSA failed to provide any benefits and services to either S.S., A.B., or N.B.., which has caused them significant financial and emotional harm.

76.     CFSA has intentionally discriminated against Plaintiffs based on familial status by refusing to provide the same benefits and services, including the tangible benefit of foster care maintenance payments, it provides to foster families.  CFSA's decision to selectively deny Plaintiffs the opportunity to receive these services and support is based solely on familial status.  Accordingly, Defendants discriminated against Plaintiffs by denying them the tangible benefit of foster care maintenance payments based on the Plaintiffs' status in a protected class.

77.     As a consequence of Defendants' acts or omissions, Plaintiffs have sustained damages and will sustain future damages in an amount to be proven at trial.

## COUNT V:  NEGLIGENCE

78.    Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs of this complaint.

79.    The D.C. Child Abuse and Neglect Act creates a special relationship between Defendants and D.C.'s abused and neglected children, imposing on Defendants statutorily-defined duties and responsibilities to, *inter alia*, "safeguard[] the rights and protect[] the welfare" of those children. D.C. Code § 4-1303.01a. At all times Defendants owed A.B. and N.B. the duty to act with due care.

80.    Once Defendants identified A.B. and N.B. as children who had been abused or neglected and who could not be adequately protected in the parental home through the provision of services, Defendants owed a legal duty to them to act with due care in fulfilling their duties and responsibilities under the D.C. Child Abuse and Neglect Act to:

(a)    remove A.B. and N.B. from their home in compliance with statutorily mandated safeguards, § 4-1303.04(c);

(b)    ensure that A.B. and N.B. were placed in a licensed or approved foster family home, §§ 4-217.02;

(c)    provide or arrange for appropriate services for A.B. and N.B. §§ 4-1301.09(b), 4-1301.02(3);

(d)    prepare a case plan for A.B., N.B., and S.S. and ensure A.B. and N.B.'s status was reviewed periodically, §§ 4-1301.09(b)-(d), 4-1301.02(3);

(e)    provide monetary support on behalf of A.B. and N.B., § 4-217.01, CFSA, *Resource Parent Handbook* 93–95 (2018).

81.    Defendants' failure and refusal to properly discharge these responsibilities constitutes a breach of Defendants' duty of care.

82.     Defendants' breach of duty proximately caused injury to A.B. and N.B. in the form of emotional and financial harm, which injury was reasonably foreseeable.

### COUNT VI:  FRAUDULENT MISREPRESENTATION

83.     Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs of this complaint.

84.     CFSA, through its agents, made false representations to S.S. about her rights and responsibilities regarding A.B. and N.B., or willfully omitted material facts about those rights and responsibilities.  Pursuant to 42 U.S.C. § 671(a)(29), Defendants had a statutory duty to explain to S.S. the options to participate in A.B. and N.B.'s care and placement, and Defendants' failure to provide such explanation constitutes a breach of this duty to disclose.  CFSA's agents knowingly made these false statements or willful omissions, or concealed the truth knowingly and with the intent to induce reliance on their misrepresentations or willful omissions. S.S. reasonably and justifiably relied on the misleading and incomplete information and, as a result, took action that led to an egregiously unfair result for Plaintiffs.

85.     On May 22, 2020, CFSA told S.S. that she needed to file a motion for emergency custody of A.B. and N.B. if she did not want A.B. and N.B. to be placed in foster care with a stranger. CFSA deliberately concealed from S.S. her options to participate in A.B. and N.B.'s care and placement, including that CFSA had petitioned the D.C. Family Court for removal of A.B. and N.B. and could place A.B. and N.B. with S.S. in a foster care placement. CFSA deliberately concealed these material facts from S.S., which deceived S.S. into believing she needed file an emergency motion for custody of A.B. and N.B. in order to be able to care for the children.  Further, when S.S. later asked CFSA social worker Denise Jackson if she could be licensed as a foster parent for A.B. and N.B., Jackson told S.S. she could not.  S.S. reasonably relied on the incomplete

and misleading representations of CFSA, filed the emergency motion for custody, and has suffered emotional and financial harm as a result, in an amount of damages to be determined at trial.

## COUNT VII:  NEGLIGENT MISREPRESENTATION

86.     Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs of this complaint.

87.     Alternatively, even if CFSA did not know its representations to S.S. were false and did not intend to deceive her, its misrepresentations were negligent.

88.     As averred in Par. 85, the statements CFSA agents made to S.S. were false or omitted material facts, as CFSA failed to inform S.S. of her options to participate in the care of A.B. and N.B.  CFSA agents had a legal duty to disclose such information pursuant to 42 U.S.C. § 671(a)(29). Those statements or concealments concerned the material issue of the actions S.S. needed to take in order to participate in the care of A.B. and N.B. and receive benefits, services, and support for providing such care. S.S. reasonably relied on the advice of CFSA agents to her detriment and suffered emotional and financial harm as a result, in an amount of damages to be determined at trial.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

(a)     Issuance of a declaratory judgment that Defendants' custom and practice of kinship diversion, in particular the informal removal and placement through kinship diversion of A.B. and N.B. to S.S., violates Title IV-E of the Social Security Act, 42 U.S.C. §§ 670–679c, the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment, the D.C. Child Abuse and Neglect Act, and the D.C. Human Rights Act;

(b)      Entry of a permanent injunction preventing Defendants from retaliating against S.S. for seeking foster care maintenance payments;

(c)      Entry of a permanent injunction preventing Defendants from continuing the custom and practice of kinship diversion;

(d)      Award Plaintiffs compensatory damages in an amount equal to the total foster care maintenance payments that Plaintiffs would have received since the kinship diversion was effected, applying the current payment rate of $1,140 per 30-day period, plus interest, and other damages attributable to Defendants' violation of federal and D.C. law;

(e)      Issuance of an order that, for so long as A.B. and N.B. remain in the sole or primary physical custody of S.S., Defendants continue to pay to Plaintiffs an amount equal to foster care maintenance payments and other damages attributable to Defendants' violation of federal and D.C. law;

(f)      Award costs, and expenses for this action, including attorneys' fees; and

(g)      Award such further relief as this Court deems necessary, proper, and just.

A JURY TRIAL IS HEREBY DEMANDED.

Respectfully submitted,

*/s/ Samantha Badlam*
Samantha Badlam
D.C. Bar No. 977190
202-508-4734
samantha.badlam@ropesgray.com

Peter Brody
D.C. Bar No. 398717
202-508-4612
peter.brody@ropesgray.com

Scott McKeown
D.C. Bar No. 314459
202-508-4740
scott.mckeown@ropesgray.com

Rebecca Williams
D.C. Bar No. 229868
202-508-4726
rebecca.williams@ropesgray.com

Ropes & Gray LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006


Marla Spindel
D.C. Bar No. 443306
202-360-7106
marla@dckincare.org

Stephanie McClellan
D.C. Bar No. 485658
202 550-4014
stephanie@dckincare.org

DC KinCare Alliance
1101 Connecticut Avenue, NW, Suite 450
Dated: March 18, 2021                          Washington, DC 20006

*Attorneys for Plaintiffs*